IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| TONIA LAFAYETTE, | PLAINTIFF/COUNTERDEFENDANT, |
| VS. | CIVIL ACTION NO. 4:04CV85-P-B |
| GUARANTEE RESERVE LIFE INSURANCE COMPANY, | DEFENDANT/COUNTERPLAINTIFF/ THIRD PARTY PLAINTIFF, |
| VS. | |
| RUTH LOVE AND VERONICA EVANS, and HARRIS FUNERAL HOME, | THIRD PARTY DEFENDANTS. |

## MEMORANDUM OPINION

These matters come before the court upon Successor by Merger to Guarantee Reserve Life Insurance Company, Reassure America Life Insurance Company's Motion for Summary Judgment [19-1] and Tonia Lafayette's Cross Motion for Partial Summary Judgment Against the Defendant, Guarantee Life Insurance Company, and Third Party Defendants Ruth Love and Veronica Evans [39-1]. Upon due consideration of the motions and the responses filed thereto the court is prepared to rule.

### I. FACTUAL BACKGROUND

On December 12, 2002 Blanchie M. Evans applied for a Reassure America whole life insurance policy with a benefit of $12,000.00. The application named "Tonya [sic] Lafayette" as Evans's "granddaughter." The policy was issued with an effective date of January 15, 2003. Evans passed away almost two months later on March 28, 2003. On March 31, 2003 and April 8, 2003, Ruth Love and Veronica Evans, the decedent's daughters, notified Reassure America that

1

they were contesting the beneficiary designation, alleging that Lafayette was not their mother's granddaughter, nor was she related at all.[1]

On April 11, 2003 Reassure America advised that because Evans's death occurred within two years of the policy date, the policy was contestable and that Reassure America would undertake a routine investigation. Reassure America requested Lafayette to provide a certified copy of the death certificate, a beneficiary's statement, and a doctor's statement. On May 2, 2003, Reassure America wrote to Lafayette advising her that it had not yet made a decision on her claim because it had not received the requested documentation. On May 27, 2003 Reassure wrote Lafayette again advising same. On June 16, Reassure America wrote Lafayette advising that they would be closing the claim file because Lafayette had not yet submitted the necessary documentation. Reassure America further advised that the claim file would be reopened when the documentation was submitted.

On September 3, 2003 Reassure America received the requested documentation from Lafayette – some five months after they had first requested the information. Reassure America then reopened the claim file and on September 22, 2003 requested Evans's medical records. On September 22 and 24, 2003, Reassure America advised Lafayette, as well as Evans's two daughters, of the status of the review of the claim. September 24, 2003 was the first time that Lafayette had been told of the competing claims by Evans's daughters.

On October 15, 2003 and November 7, 2003, Reassure America advised Lafayette that they had requested the medical records and were waiting to receive them. On November 24, 2003 Reassure America received Evans's medical records whereupon it determined the benefits were

---

[1] Lafayette has not denied she was not related to Blanchie M. Evans.

2

payable under the policy.

On December 29, 2003, Reassure America notified Lafayette and Evans's two daughters that the benefits were payable and asked them to reach an agreement among themselves regarding distribution of the proceeds within 30 days. Reassure America also advised that if they could not reach an agreement among themselves within those 30 days, Reassure America would file an interpleader action.

Before the expiration of the 30 days, Reassure America received correspondence from Lafayette's attorney, Eric Hawkins, demanding payment of the benefits within 10 days. After receiving no response from Reassure America, Lafayette filed suit against Reassure America on February 20, 2004 in the Chancery Court of Washington County, Mississippi asserting that the insurance company was liable for breach of the insurance contract and tortious breach of the insurance contract entitling Lafayette to actual damages, punitive damages, and attorney fees.

On March 26, 2004 Reassure America removed this action to federal court asserting diversity jurisdiction.[2] Simultaneously, Reassure America filed its Counterclaim and Third Party Complaint in Interpleader against Tonia Lafayette, Ruth Love, and Veronica Evans pursuant to Federal Rules of Civil Procedure 14 and 22. In said complaint, Reassure America seeks the following: (1) permission to interplead the $12,000 net policy proceeds into the registry of the court; (2) discharge of Reassure America from all liability; (3) an injunction enjoining Lafayette, Evans, and Love from asserting any further claims regarding the subject insurance policy; (4) an order directing Lafayette, Evans, and Love to interplead their claims; and (5) for the court to

---

[2] Lafayette is a resident of Mississippi, the insurance company is a resident of Illinois, and Ruth Love and Veronica Evans are residents of Michigan.

resolve the adverse claims among them.

The docket reflects that summonses were returned executed on Evans and Love and that the deadline by which they were to file their answers were May 9, 2004 and May 14, 2004 respectively. No answers have been filed by either Evans or Love; indeed, the docket reflects no activity with regard to them.

On August 27, 2004, the defendant filed its Amended Counterclaim and Third Party Complaint in Interpleader adding Harris Funeral Home as a Third-Party Defendant in addition to Ruth Love and Veronica Evans. The defendant added Harris Funeral Home simply because on April 21, 2003 Harris Funeral Home submitted to the defendant its Assignment of Proceeds of Insurance signed by Lafayette for $1223.89.

Presently before the court is Reassure America's Motion for Summary Judgment seeking the relief requested in their complaint in interpleader as well as Lafayette's motion for partial summary judgment regarding liability for breach of contract and tortious breach of contract.

## II. DISCUSSION

**A. Summary Judgment**

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of

4

fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (l986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l03l (5 Cir. l982); *Environmental Defense Fund v. Marsh*, 65l F.2d 983, 99l (5 Cir. l98l); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5 Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id.*, at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id.*, at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978); *Schuchart & Associates v. Solo Serve Corp.*, 540 F.Supp. 928, 939 (WD Tex. 1982).

**B. Reassure America's Motion for Summary Judgment**

Reassure America seeks summary judgment on the plaintiff's claims arguing that Lafayette has proffered no evidence that Reassure America breached, much less tortiously breached, the subject insurance contract given that (1) Reassure America had the right to conduct a routine contestability investigation of Lafayette's claim to the $12,000 proceeds since the policy allowed such an investigation if the insured died within two years of the policy's effective date and Evans died within two months after the effective date; (2) it took Lafayette over five months to send Reassure America the documents it requested for the claims procedure; (3) Reassure America determined that the claim was payable after a reasonable investigation period, and (4) Reassure America has been ready, willing, and able to play the claim since December 30, 2003 but has not yet done so because of the competing claims among Lafayette, Evans, and Love (and, presumably, Harris Funeral Home).

By way of its motion for summary judgment, Reassure America also seeks the remedies requested in its complaint for interpleader – *i.e.*, (1) permission to interplead the $12,000 net policy proceeds into the registry of the court; (2) discharge of Reassure America from all liability; (3) an injunction enjoining Lafayette, Evans, Love, and Harris Funeral Home from asserting any further claims regarding the subject insurance policy; (4) an order directing Lafayette, Evans, Love, and Harris Funeral Home to interplead their claims; and (5) for the court to resolve the adverse claims among them.

In her response, the plaintiff essentially argues – without elaboration or citations to substantial evidence or binding authority – that the insurance company breached, and tortiously breached, the insurance contract by failing to make a timely and complete investigation of the claim and by failing to tell Lafayette of the competing claims by Love and Evans until after Lafayette formally submitted her claim in September 2003. Furthermore, Lafayette asserts without elaboration that Reassure America does not have the right seek an interpleader action because it is not in likely peril of multiple lawsuits.

Reassure America replies that the plaintiff failed to properly create genuine issues of material fact because her response sets forth no evidence supporting her claims for breach of contract or tortious breach of contract; rather, Lafayette's response provides only general denials and theories. Reassure America cites Rule 56(e) providing that a plaintiff "may not rest upon mere allegations or denials of the adverse party's pleading but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). That is,"'[o]nly evidence – not argument, not facts in the complaint – will satisfy' this burden." *Johnston v. City of Houston, Tex.*, 14 F.3d

1056, 1060 (5th Cir. 1994). With respect to the plaintiff's argument that Reassure America did not inform Lafayette of the contest until after she submitted a written claim for benefits under the policy, the defendant argues that the plaintiff has provided no authority that an insurer must notify a named beneficiary of a contest prior to her submitting a formal, completed claim for benefits.

**C. Lafayette's Motion for Partial Summary Judgment**

In her motion for partial summary judgment as to liability, the plaintiff requests that the court enter the following relief: (1) order that Lafayette is the sole beneficiary under the life insurance contract; (2) order that the proceeds be paid to Lafayette and Harris Funeral Home, pursuant to assignment of proceeds executed by Lafayette to Harris on April 4, 2003; (3) enter a default and order of dismissal with prejudice against the Third Party Defendants Ruth Love and Veronica Evans; (4) direct a verdict for liability in favor of Lafayette against the insurance company; and (5) remand the proceedings to the Magistrate Judge for further scheduling orders concerning discovery, pretrial conference, and trial regarding the following issues: (a) actual damages, if any, for breach of contract; (b) determination of questions of liability and damages on the plaintiff's claim of tortious breach of contract; and (c) what amount, if any, is appropriate for attorney fees.

In her motion for partial summary judgment, Lafayette argues that partial summary judgment should be granted as to liability for breach, and tortious breach, of the insurance contract because of Reassure America's: (1) failure to pay Lafayette after a determination that the claim was payable; (2) failure to deal fairly and in good faith with the beneficiary by failing to timely inform her of the contest; (3) failure to conduct a proper investigation regarding the

beneficiary designation given that no one at Reassure America sought legal advice; (4) misrepresentation and use of superior bargaining position to attempt to force Lafayette to take less than amount to which she was entitled by asking her to agree with Love and Evans to settle the contest among them; and (5) threat of using the interpleader process when such process was unnecessary or legally unjustified.

None of Lafayette's five arguments are supported by binding, on-point authorities, nor are they supported by substantial evidence. First, Reassure America's "failure" to pay Lafayette the $12,000 insurance proceeds is based on its belief that there has been a potentially legitimate contest to Lafayette as a beneficiary asserted by the deceased daughters. Reassure America has not denied Lafayette's claim, but rather are awaiting resolution of the contest. Second, there is no evidence or binding authority cited stating that Reassure America had a duty to inform Lafayette of the contest until after she actually filed her completed, formal complaint in September 2003. Nor is there any evidence Lafayette was injured by this lack of information. Third, Lafayette has not established by substantial evidence or binding, on-point authorities that Reassure America necessarily failed to conduct a proper investigation, thereby breaching or tortiously breaching the insurance contract, by not seeking legal advice regarding the validity of the contest. Indeed, it is common sense that there might be a legal problem with a beneficiary named as a granddaughter when a decedents's daughters aver that the person is not related to the decedent at all. Fourth, the argument regarding Reassure America's misuse of its superior bargaining power to "force" Lafayette to receive less money is clearly without merit. Finally, it is not readily apparent from the evidence that Reassure America did not have the legal right to file a complaint in interpleader. In fact, Reassure America is correct that the instant case is a classic example of the

applicability of Rule 22 interpleader.

The court concludes that Lafayette's motion for partial summary judgment should be denied because she has not met her burden in proving with sufficient evidence that there is no genuine issue of material fact that compels the court to enter summary judgment on her claims of breach, and tortious breach, of contract against Reassure America.

### **D. Interpleader**

Federal Rule of Civil Procedure 22(1) provides in pertinent part:

> Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. ... A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim.

According to Professors Wright and Miller, "[i]nterpleader ... whether asserted in a complaint or by way of a cross-claim or counterclaim, affords a party who fears being exposed to the vexation of defendant multiple claims to a limited fund ... that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." 7 Fed. Prac. & Proc. Civ.3d § 1704.

Subject matter jurisdiction brought under Rule 22(1) must be based on federal question or diversity jurisdiction. In this case, there is diversity jurisdiction because there is complete diversity and the amount in controversy involves $212,000.00 in actual damages and punitive damages in the amount of $1,000,000.00.

Because interpleader provisions are remedial in nature, they should be applied liberally. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523 (1967); *In the Matter of Bohart*, 743 F.2d 313, 314 (5th Cir. 1984).

Requests for interpleader involve a two-step determination. First, the court must determine the propriety of interpleader. If the court determines that interpleader is appropriate, then the court must determine what consequences should occur after allowing interpleader. The main test for determining the propriety of interpleader is whether the stakeholder legitimately fears multiple suits directed against a single fund. *E.g., Fidelity Brokerage Servs., LLC v. Bank of China*, 192 F.Supp.2d 173, 177 (S.D.N.Y. 2002). Most courts emphasize that the vexation and expense of potential multiple suits justifies the use of interpleader even absent a substantial danger of multiple liability. *Wassau Ins. Cos. v. Gifford*, 954 F.2d 1098, 1101 (5th Cir. 1992).

The court concludes that Reassure America had a legitimate concern that it ran the risk of multiple suits asserted against them. As stated above, it is reasonable to expect more than one lawsuit when the two daughters of an insured decedent contest the named beneficiary because said beneficiary was not related at all to the decedent, even though the insurance application indicated that the beneficiary was the decedent's granddaughter. Based on these facts, it is reasonable to believe that various legal theories could be asserted in support of the contest including fraud, undue influence, lack of mental capacity, etc.

Because the court concludes that the insurance company's use of Rule 22 interpleader was and is appropriate, the circumstances of this case warrant the following actions: (1) Reassure America has permission to interplead the subject $12,000 net insurance policy proceeds into the registry of the court; (2) Reassure America should be discharged from all further liability regarding the subject insurance policy; (3) Lafayette, Evans, Love, and Harris Funeral Home should be enjoined from asserting any further claims regarding the subject insurance policy; (4) Lafayette, Evans, Love, and Harris Funeral Home's claims should be interplead and the court

should resolve the adverse claims among them.

Given the circumstances, however, it is unnecessary to delay final resolution of Lafayette, Evans, Love, and Harris Funeral Home's claims. Despite the record's reflection that summonses were returned executed with respect to Evans and Love, neither of them have filed answers or otherwise made their presence known in this case. Therefore, the court concludes that by default, any claims they may have had to the $12,000 insurance proceeds should be dismissed with prejudice. It is undisputed that Harris Funeral Home is entitled to $1223.89 pursuant to its assignment agreement with Lafayette. Thus, after Reassure America deposits the $12,000 into the registry of this court, the Clerk's Office should remit $1223.89 to Harris Funeral Home. The remainder, $10, 776.11 should be paid to the plaintiff. The court declines to award any attorney fees.

### III. CONCLUSION

For the reasons discussed above, Reassure America Life Insurance Company's Motion for Summary Judgment [19-1] should be granted and Tonia Lafayette's Cross Motion for Partial Summary Judgment [39-1] should be denied. An Order shall issue forthwith,

**THIS DAY** of August 17, 2005.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE